**ST. LOUIS–SAN FRANCISCO RAILWAY COMPANY, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

No. 36282.

Supreme Court of Oklahoma.

May 3, 1955.

John E. McCullough, Satterfield, Franklin & Harmon, Oklahoma City, for plaintiff in error.

James G. Welch, Montford Johnson, T. Earl Curb, Oklahoma City, for Corporation Commission of State of Oklahoma, for defendant in error.

ARNOLD, Justice.

This is an appeal from an order of the Corporation Commission denying St. Louis-San Francisco Railway Company permission to discontinue the operation of passenger trains over its branch line running from Lawton to the Oklahoma-Texas State line and having its terminus at Quanah, Texas.

In support of its application to discontinue such passenger trains the evidence of the railway company is to the effect that trains 409 and 404 operate daily between Lawton and the Oklahoma-Texas State line, a distance of 85.7 miles, Train 409 being the westbound and Train 404 the east-

bound train over said line; that these trains serve and make a scheduled stop at Lawton, Cache, Indiahoma, Odetta, Snyder, Headrick, Altus, Olustee, and Eldorado; that each train consists of an engine, baggage car, combination baggage-mail car, and air conditioned chair car with a seating capacity of 60 persons; that five employees are required to run each of these trains, and each train also carries an express messenger whose salary is paid one-half by the express company and one-half by the railroad company; that the average number of passengers carried by these trains per train mile during the last three months of 1951 was 4.9 persons, the year 1952 was 5½ persons and for the first four months of 1953 was 4.5 persons; that over this 19-month period these trains operated at a loss of 97¢ per mile when direct, out-of-pocket expenses were compared with the earnings of these trains and at a loss of $2.64 per train mile when the fully distributed operating expenses (such as taxes, administration expense, etc.) were compared with the earnings; that even if the earnings from the carriage of mail, (which is not a common carrier duty) were considered the trains still operated at a loss of 60¢ per train mile; that every one of the 9 communities having a total population of 48,465, located on this route is located on a federal, state, or other all-weather highway; that all have highway express service; that of the population of these nine communities 97.55 per cent have available common carrier bus service, 95.20 have rail passenger train service other than the two trains in question; that only 2.45 per cent have neither bus nor train service available except these two trains.

The evidence of protestants consisted of a written protest signed by 145 people of the town of Olustee and one letter from a resident of Headrick asking that the trains not be discontinued, and oral testimony to the effect that the freight service on this line was profitable and sufficient to pay for the loss incurred by reason of the passenger service.

The Commission found that applicant failed to prove that public convenience and necessity no longer required the continued operation of these trains, that the overall

revenue from this particular branch line was insufficient, and wholly and completely failed to establish its case, and denied the application to discontinue the passenger trains.

The facts in this case are very similar to those in St. Louis-San Francisco Ry. Co. v. State, 204 Okl. 432, 230 P.2d 709; St. Louis-San Francisco Ry. Co. v. State, Okl., 262 P.2d 168. In those cases we distinguished public necessity from public convenience, and held that where public necessity therefor no longer exists the operation of passenger trains is not an absolute duty and where the operation of passenger trains to meet public convenience could not be done without entailing an out of pocket loss to require such facilities would be to take the carrier's property without due process of law. In those cases the railroad companies, having shown lack of public necessity, were not required to prove that the total revenue from both freight and passenger service would not be sufficient to cover the loss from the operation of the passenger service.

Protestants argue that since the Supreme Court of the United States held in King v. United States, 344 U.S. 254, 73 S.Ct. 259, 97 L.Ed. 301, that the Interstate Commerce Commission in prescribing freight rates for railroads might give weight to deficits in passenger revenue, that it would be inconsistent regulation to allow the railroads to obtain increased freight rates because of deficits in passenger train operations and then to allow them to discontinue unprofitable passenger service. This argument would have more weight if, as protestants assume, the evidence showed public necessity for the trains in question. If public necessity were shown, under the cases above cited, the railroad companies would have an absolute duty to operate the trains and the question of lack of sufficient revenue would have no bearing. Here, however, as shown by the evidence above detailed, the lack of public necessity is clearly shown by non-user. Over the 19-month period from the last three months of 1951 to the first four months of 1953 only an average of 5.2 persons per train mile

used these trains out of a population of 48,-465, and on an average there were more people required to operate the trains than rode them. To all but 2.45 per cent of the population served by these trains other public transportation is available, and even that 2.45 per cent are located on paved highways. It is clear that these trains serve only public convenience, not public necessity, and the finding of the Commission to the contrary is not supported by substantial evidence. The rule announced in the three cases cited above therefore applies.

Reversed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.